IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO COOKE LEGAL GROUP, PLLC | Misc. Action No._____ |
| *UNDERLYING CASES:* <br><br> JAMES OWENS, et al., <br><br>     Plaintiffs, <br><br> v. <br><br> REPUBLIC OF SUDAN, et al., <br><br>     Defendants. | Civil Action No. 01-2244 (JDB) |
| JUDITH ABASI MWILA, et al., <br><br>     Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br>     Defendants. | Civil Action No 08-1377 (JDB) |
| RIZWAN KHALIQ, et al., <br><br>     Plaintiffs, <br><br> v. <br><br> REPUBLIC OF SUDAN, et al., <br><br>     Defendants. | Civil Action No. 10-356 (JDB) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO NONPARTY COOKE LEGAL GROUP, PLLC**

## INTRODUCTION

Plaintiffs are victims and surviving family members of the 1998 terrorist bombings of the U.S. embassies in Tanzania and Kenya who hold judgments against Defendants the Republic of Sudan ("Sudan") and the Islamic Republic of Iran ("Iran") totaling nearly $1 billion.[1] Plaintiffs have not received one cent in compensation from Sudan or Iran, and they are actively pursuing discovery in aid of execution to identify the Defendants' assets. Cooke Legal Group, PLLC ("Cooke Legal") was paid hundreds of thousands of dollars to provide legal and policy advice to Sudan regarding Sudan's efforts to restructure its sovereign debt. Plaintiffs therefore issued a subpoena to Cooke Legal on May 1, 2019 (the "Subpoena") seeking information regarding Sudan's debt restructuring activity, information on how Cooke Legal was paid for its work for Sudan, as well as other material reflecting Sudan's commercial activity in the United States—all undisputedly relevant to Plaintiffs' judgment enforcement efforts.

Despite Plaintiffs' best efforts to work cooperatively with Cooke Legal, Cooke Legal (1) never responded to the Subpoena in writing; (2) withheld over 1,000 potentially responsive documents under a blanket claim of privilege; and (3) has now ignored Plaintiffs' efforts to meet and confer for over two months. Plaintiffs therefore move this Court, pursuant to Federal Rules of Civil Procedure 37 and 45, for an order compelling Cooke Legal to comply with the Subpoena.

---

[1] On March 28, 2014, this Court entered judgments for the *Owens* Plaintiffs in the amount of $487,687,665.78, *see* Order, *Owens v. Republic of Sudan*, No. 01-2244 (D.D.C. Mar. 28, 2014), Dkt. No. 301; the *Mwila* Plaintiffs in the amount of $419,752,640.49, *see* Order, *Mwila v. Islamic Republic of Iran*, No. 08-1377 (D.D.C. Mar. 28, 2014), Dkt. No. 88; and the *Khaliq* Plaintiffs in the amount of $49,761,544.86, *see* Order, *Khaliq v. Republic of Sudan*, No. 10-356 (D.D.C. Mar. 28, 2014), Dkt. No. 40. (collectively, "the Judgments").

2

## BACKGROUND

### I. Cooke Legal's Work for Sudan

To aid in judgment execution, Plaintiffs are seeking third-party discovery from entities known to be engaged in commercial activity with Sudan or an agency or instrumentality of Sudan, including Cooke Legal.[2] Formerly doing business under the name Cooke Robotham, LLC, Cooke Legal was a FARA-registered foreign agent of Sudan from August 26, 2016 to September 30, 2017. *See* DOJ Historical Foreign Principal Database, available at https://efile.fara.gov/browse (last accessed August 6, 2019). In that capacity, Cooke Legal, through a sub-contract with Dentons UK and Middle East ("UKMEA"), was paid up to $300,000 for its work for Dentons to provide legal and policy advice to Sudan "on a proposed debt restructuring strategy." *See* Decl. Ex. 2, FARA Registration Statement, at 3.[3] According to Cooke Legal's FARA registration statement dated February 14, 2017, the work was authorized by a General License issued by the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") on January 13, 2017 and included "political activities through engagement with U.S. government officials on the prospects for U.S. government support for debt relief with respect to the Government of

---

[2] Under the "terrorism exception" to the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. § 1605A, Plaintiffs may seek attachment in aid of execution of "property in the United States of [a foreign state or] an agency or instrumentality of a foreign state engaged in commercial activity in the United States," 28 U.S.C. §1610(b)(3). The FSIA defines "agency or instrumentality" as any entity "1) which is a separate legal person, corporate or otherwise, and 2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or a political subdivision thereof, and 3) which is neither a citizen of a State of the United States . . . nor created under the laws of any third country." 28 U.S.C. § 1603(b).

[3] References to an exhibit are references to the exhibits of the Declaration of Noah P. Sullivan, dated September 4, 2019, which was filed in support of this motion.

3

Sudan." *Id.* at 4 (Questions 8 and 9).[4] The primary attorney responsible for work on the contract was then-Cooke Legal partner Thomas W. Laryea. *See id.* at 4.

## II. Plaintiffs' Subpoena To Cooke Legal

Plaintiffs issued a third-party Subpoena to Cooke Legal on May 1, 2019, with a response deadline thirty days later, on May 31, 2019. *See* Decl. Ex. 1. The Subpoena requested, among other things, contracts or agreements between Cooke Legal and Sudan, documents sufficient to show all payments from Sudan to Cooke Legal or any other person, and documents concerning Sudan's commercial activity in the United States. *See id.* at 13.

On May 1, 2019, Plaintiffs attempted to serve the Subpoena on Cooke Legal at its primary place of business, but their process server was told that no one was available to accept service. *See* Decl. Ex. 3 at 2. On May 2, 2019, Plaintiffs sent the Subpoena by email and UPS Next Day Air to Cooke Legal and tried to reach Cooke Legal's agent for service of process, Mr. Edmund Cooke, by phone but heard nothing back.[5] *See id.* at 1. Plaintiffs' counsel finally was able to reach Mr. Cooke by phone on May 7, 2019, and Mr. Cooke stated that he had been out of the office and therefore unable to accept personal service. *Id.* In the same conversation, Mr. Cooke confirmed that Cooke Legal would accept service of the subpoena by email. *See id.*[6]

---

[4] "A license is an authorization from OFAC to engage in a transaction that otherwise would be prohibited. . . . . A general license [as opposed to a specific license] authorizes a particular type of transaction for a class of persons without the need to apply for a license." *See* OFAC FAQ: Basic Information on OFAC and Sanctions, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#licenses (last accessed August 13, 2019).

[5] The subpoena sent by UPS to Cooke Legal was ultimately returned to sender on May 6, 2019. When Plaintiffs' counsel spoke with Mr. Cooke on May 7, 2019, Mr. Cooke explained that he had instructed the receptionist not to accept the package because he was not in the office to receive it.

[6] Although there is authority in this jurisdiction requiring strict adherence to Federal Rule of Civil Procedure 45(b)'s personal service requirement, *see, e.g., Call of the Wild Movie, LLC v. Does,* 1-1,062, 770 F. Supp. 2d 332, 362 (D.D.C. 2011), the circumstances here are

4

### III. Plaintiffs' Good Faith Efforts To Negotiate With Cooke Legal

With service issues settled, Plaintiffs sought to discuss Cooke Legal's response to the Subpoena, but Mr. Cooke again became unresponsive. Without prior notification, Mr. Cooke failed to attend a May 8, 2019 teleconference scheduled with Plaintiffs' counsel. *See* Decl. Ex. 4 at 1. On May 13, 2019, Plaintiffs' counsel again reached Cooke Legal to discuss the matter with Mr. Cooke, who generally described the sovereign debt restructuring work Cooke Legal did for Sudan. He relayed that he needed to speak with his former partner, Thomas Laryea, who had done all of the Sudan work on the Cooke Legal contract, and others, and agreed to followed up the next day. *See* Decl. Ex. 5 at 1.

Three days later, on May 16, 2019, Plaintiffs' counsel spoke with Mr. Cooke and Mr. Paul Nettleford, another partner at Cooke Legal. *See* Decl. Ex. 6 at 2. Cooke Legal indicated that it was not inclined to produce any documents because they had privilege and confidentiality concerns. *Id.* Plaintiffs made clear from the beginning that they were not seeking privileged communications and were interested in finding a way to reduce any burden on Cooke Legal to provide Plaintiffs with the information they sought. *Id.* Mr. Cooke confirmed that Cooke Legal maintained the records from Cooke Legal's engagement with Sudan, but indicated that he had not yet specifically reviewed the Subpoena, nor conducted any search for documents. *Id.* Messrs. Cooke and Nettleford again indicated that Mr. Laryea had done the work for Sudan and that, in that capacity, he would have communicated with third party entities regarding Sudan's debt

---

distinguishable. Unlike the *Maverick* subpoena recipient in *Call of the Wild*, which expressly objected to service as improper, *see id.* at 361, here, Cooke Legal expressly agreed to waive personal service and accept service of the subpoena by email, *see* Decl. Ex. 3 at 1.

restructuring. *Id.* They also indicated that Cooke Legal retained Mr. Laryea's emails. *Id.* The parties agreed to talk again after Cooke Legal had more time to review the Subpoena. *Id.*

On May 23, 2019 Plaintiffs held a further teleconference with Cooke Legal. *See id.* at 1; *see also* Decl. Ex. 7. Mr. Nettleford represented that he had conducted a search for the word "Sudan" in Mr. Laryea's email and electronic records, which returned over 1,000 documents. *See* Decl. Ex. 7 at 2. Based on his initial review of the documents, Mr. Nettleford claimed that any substantive documents were privileged. *Id.* As far as payment information, Mr. Nettleford indicated that all payments were received from Dentons, not Sudan, and therefore documents related to those payments were not responsive to the Subpoena. *Id.* at 1-2.[7]

On May 29, 2019, Plaintiffs sent a letter to Cooke Legal memorializing the May 23, 2019 conversation and responding to Cooke Legal's blanket privilege claim. *Id.* Plaintiffs received no response to that letter. *See* Decl. ¶ 13. Plaintiffs sent Cooke Legal another email on June 17, 2019, again attaching the May 29, 2019 letter. *See* Decl. Ex. 8. On June 20, 2019, Plaintiffs' counsel called and left a voicemail for Mr. Nettleford, but received no response. *See* Decl. Ex. 9 at 1. On June 28, 2019, Plaintiffs sent a final letter to Messrs. Cooke and Nettleford, advising them that their failure to respond left Plaintiffs with no option but to seek enforcement of the Subpoena. *Id.* Plaintiffs received no response. *See* Decl. ¶ 17. In compliance with Local Civil Rule 7(m), Plaintiffs' counsel called Mr. Nettleford to seek Cooke Legal's position on Plaintiffs' motion to compel. Mr. Nettleford reiterated that Cooke Legal did not consent to the motion and claimed that all substantive documents that Cooke Legal possesses would be privileged. The parties have

---

[7] To the contrary, since Dentons was working on behalf of Sudan, these records are, at a minimum, likely responsive to Request Nos. 4 and 5 of the Subpoena, which seek, among other things, documents sufficient to show "all payments or assets provided by Sudan to [Cooke Legal] *or any other Person*," (emphasis added), and documents sufficient to identify accounts maintained anywhere in the world in the name of Sudan. *See* Decl. Ex. 1 at 13.

6

therefore been unable to resolve or substantially narrow their differences, and intervention by this Court is necessary to compel Cooke Legal to respond to the Subpoena.

## ARGUMENT

### I. It Is Undisputed That The Information Plaintiffs Seek Is Relevant To Their Judgment Enforcement.

Cooke Legal has not contested the fact that the information Plaintiffs seek–which concerns Sudan's commercial activity–is highly relevant to Plaintiffs' efforts to enforce their Judgments. Rule 69(a)(2) of the Federal Rules of Civil Procedure specifically provides the right to post-judgment discovery "in aid of the judgment." Rule 26, as incorporated by reference in Rule 45, further provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1); *see also Cofield v. City of LaGrange, Ga.*, 913 F. Supp. 608, 614 (D.D.C. 1996) ("The relevancy threshold is not high: material sought need not be admissible at trial, but must be relevant to the subject matter of the litigation and reasonably calculated to lead to admissible evidence.").

Information on how Sudan is paying its lawyers and lobbyists in the United States, as with any information on Sudan's commercial activity, is directly relevant to Plaintiffs' efforts to enforce the Judgments that Sudan has evaded for over five years, because the information would illuminate potentially attachable assets. *See Amduso v. Republic of Sudan*, 288 F. Supp. 3d 90, 95 (D.D.C. 2017) ("[A]ny transactions in which Sudan or its agencies or instrumentalities may have engaged in the intervening time are quite relevant to determining Sudan's potentially attachable assets").

7

Sudan has substantial sovereign debt.[8] Sudan attempted to restructure that debt in 2016-2017, and Dentons UKMEA engaged former Cooke Legal partner Thomas Laryea (who is also a former official at the International Monetary Fund) to provide policy and legal advice regarding the restructuring efforts. *See* Decl. Ex. 2 at 3. Those debt restructuring activities likely generated substantial non-privileged information regarding Sudan's assets and liabilities, the identity of financial institutions Sudan was transacting business with, and other information highly relevant to Plaintiffs' search for attachable assets to satisfy the Judgments. Indeed, Cooke Legal admitted that its cursory search of the word "Sudan" within Mr. Laryea's documents, alone, returned over 1000 documents (not even accounting for Sudan's agencies and instrumentalities, of which there are dozens)—and many of those documents, including reported Power Point presentations outlining Sudan's strategy for debt restructuring, are directly relevant. *See* Decl. Ex. 7 at 2.

Cooke Legal has never contested or disputed that these materials are relevant. In each meet-and-confer, teleconference, and written communication, Cooke Legal has taken the position that documents in its possession are privileged–itself an untenable position, as further discussed below–but it has never objected to the relevance of the information sought by the Subpoena, nor denied that it may lead to information regarding attachable assets. Thus, there is no dispute between the parties regarding the relevance of this information and Cooke Legal has now waived any relevance objections to the Subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B); *see also infra* at 11.

---

[8] *See, e.g.*, Karin Strohecker, "Bashir ouster rekindles interest in long-defaulted Sudan loans," REUTERS, Apr. 12, 2019, https://www.reuters.com/article/us-sudan-politics-debt/bashir-ouster-rekindles-interest-in-long-defaulted-sudan-loans-idUSKCN1RO24S (last accessed Sept. 5, 2019).

## II. Cooke Legal Has Failed To Produce Non-Privileged Responsive Documents In Its Possession.

Cooke Legal has asserted in discussions with Plaintiffs' counsel that all potentially relevant documents in its possession are privileged. This unsubstantiated blanket claim of privilege fails for at least three reasons:

*First*, it would be implausible for even an attorney engaged to represent a client in litigation to legitimately assert a blanket privilege claim over all documents. It is even less credible for Cooke Legal to claim blanket privilege since its work as a subcontractor to Dentons related to providing "both legal *and policy advice* to the Government of Sudan on a proposed debt restructuring strategy for Sudan." *See* Decl. Ex. 2 at 3 (FARA Registration, Ex. B, Question 7 (emphasis added)); *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000) ("the attorney-client privilege 'applies only to communications made to an attorney in his capacity as legal advisor.'" (citation omitted)). Cooke Legal reported to the Department of Justice that its work would "include political activities through engagement with US government officials on the prospects for US government support for debt relief with respect to the Government of Sudan." *Id.* at 4 (Question 9). It is at best a stretch to assert a blanket privilege claim over documents related to such work. *See, e.g., U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994) ("Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege."). In fact, from Plaintiffs' various discussions with Cooke Legal, it is clear that most, if not all, of Cooke Legal's work for Dentons was related to policy and business advice, not providing legal advice. *See* Decl. Ex. 7 at 2.

*Second*, Cooke Legal's engagement letter with Dentons clearly indicates that Dentons, *not Sudan*, is Cooke Legal's client. *See* Decl. Ex. 2 at 5. It is axiomatic that the "voluntary disclosure of an otherwise privileged communication [to a third party] generally vitiates the

9

privilege." *In re Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010). Mr. Cooke and Mr. Nettleford indicated that many communications they possessed were between Mr. Layrea and Dentons, but that some communications included representatives of Sudan. Per the terms of its engagement, *see* Decl. Ex. 2 at 5, Cooke Legal cannot claim privilege over responsive communications it had with Sudan, as Sudan was itself a third party to Cooke Legal's engagement with Dentons.

*Third*, Cooke Legal has admitted it is in possession of documents regarding its billing to and payment by Dentons for the Sudan-related work. All records relating to those payments and the associated bank accounts for payments to Dentons and/or Cooke Legal are responsive and should be produced. Such records would clearly not be privileged because the billing information would not constitute a protected attorney-client communication and is not attorney work product. *See, e.g.*, *United States v. Naegele*, 468 F. Supp. 2d 165, 171 (D.D.C. 2007) ("It is established that billing statements and retainer agreements usually are not privileged.").

Finally, even if Cooke Legal is in possession of privileged documents, it has an obligation under the Federal Rules to "show that the documents requested are . . . privileged." *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010); Fed. R. Civ. P. 45(e)(2)(A) (explaining that to withhold documents on the basis of privilege, a person must: "(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."). Cooke Legal, a law firm that should be well-acquainted with the Federal Rules, has made no such showing. Even accepting that *some* of Cooke Legal's responsive documents are privileged, it is highly unlikely that *all* of them are privileged, and Cooke Legal has not substantiated its claim of privilege over any documents. Instead, it has merely waved a blanket claim of privilege over vaguely described documents after what it admits was only a preliminary

search of its records. The Court should therefore compel Cooke Legal to produce all responsive non-privileged documents in its possession as soon as possible, as well as a privilege log for all documents that it claims are privileged. *See* F.R.C.P 26(b)(1).

### III. Cooke Legal Has Waived Any Other Objection To The Subpoena By Its Failure To Respond.

Because Cooke Legal has never raised objections in writing, let alone done so within 14 days after the Subpoena was served, Cooke Legal has waived any objection to the subpoena it may now try to raise. *See* Fed. R. Civ. P. 45(d)(2)(B) ("[A] person commanded to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection[.] . . . . [which] must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."); *see also Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996) (discussing requirement); *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998) (same). Although in "unusual circumstances" and for "good cause" there may be exceptions to this waiver for failure to timely object, Cooke Legal can make no showing that such an exception is warranted here. Instead, Cooke Legal has made clear through its complete unwillingness to meaningfully engage with Plaintiffs that it has simply chosen not to comply with its obligations under the Federal Rules of Civil Procedure, which is legally impermissible and improperly impinges on plaintiffs' ability to enforce their judgments.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel compliance should be granted, and Cooke Legal should be ordered to produce the records sought in Plaintiffs' third-party subpoena.

Dated: September 6, 2019

Respectfully submitted,

/s/ *Matthew D. McGill*
Matthew D. McGill (Bar No. 481430)
Noah P. Sullivan (Bar No. 1009659)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:  202.955.8500
Facsimile:  202.530.9522
mmcgill@gibsondunn.com

Thomas Fortune Fay
FAY LAW GROUP, P.A.
777 6th Street, N.W., Suite 410
Washington, D.C. 20001
(202) 589-1300

*Attorneys for Plaintiffs*

Jane Carol Norman
BOND & NORMAN LAW, P.C.
777 6th Street, N.W., Suite 410
Washington, D.C. 20001
(202) 682-4100

*Co-counsel for Plaintiffs Khaliq, et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of September, 2019, a true and correct copy of the foregoing document was served on Cooke Legal Group, PLLC via UPS next day mail at 1155 F. Street, N.W., Suite 1050, Washington, D.C., 20004, and via electronic mail at edmundc@cookelegalgroup.com, and on the Defendants who have appeared in the underlying cases. No service is required on Defendant Iran, which is in default for failing to appear. *See* Fed. R. Civ. P. 5(a)(2). A copy of the foregoing document was sent by UPS next day mail to the following counsel of record:

Claire Angela Delelle
Christopher M. Curran
Nicole Erb
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
ccurran@whitecase.com
cdelelle@whitecase.com
nerb@whitecase.com

*Attorneys for Defendant the Republic of Sudan*

Dated: September 6, 2019

/s/ *Matthew D. McGill*
Matthew D. McGill