UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO COOKE LEGAL GROUP, PLLC | Misc. Action No. 19-0148 (JDB) |
| JAMES OWENS, et al., Plaintiffs, v. REPUBLIC OF THE SUDAN, et al., Defendants. | Civil Action No. 01-2244 (JDB) |
| JUDITH ABASI MWILA, et al., Plaintiffs, v. ISLAMIC REPUBLIC OF IRAN, et al., Defendants. | Civil Action No. 08-1377 (JDB) |
| RIZWAN KHALIQ, et al., Plaintiffs, v. REPUBLIC OF THE SUDAN, et al., Defendants. | Civil Action No. 10-0356 (JDB) |

## MEMORANDUM OPINION

Plaintiffs are judgment-holders seeking to locate and attach assets owned by defendants the Republic of the Sudan and the Islamic Republic of Iran. Plaintiffs move for the Court to order nonparty Cooke Legal Group, PLLC ("Cooke"), to produce documents in compliance with a third-party subpoena issued on May 1, 2019. Pls.' Mot. to Compel Compliance with Subpoena Directed

to Nonparty Cooke Legal Grp., PLLC ("Pls.' Mot.") [ECF No. 1] at 2.  For the reasons detailed below, the Court grants plaintiffs' motion.  Cooke's broad, generally unsupported objections are unavailing, and it must produce the requested materials.

## BACKGROUND

This discovery dispute stems from the litigation that followed the 1998 terrorist bombings at the U.S. embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania.  See, e.g., Owens v. Republic of Sudan, 174 F. Supp. 3d 242, 247–48 (D.D.C. 2016).  Plaintiffs hold judgments against the Republic of the Sudan and the Islamic Republic of Iran.  See Order, Owens v. Republic of Sudan, Civ. Action No. 01-2244 (D.D.C. Mar. 28, 2014) [ECF No. 301]; Order, Mwila v. Islamic Republic of Iran, Civ. Action No. 08-1377 (D.D.C. Mar. 28, 2014) [ECF No. 88]; Order, Khaliq v. Republic of Sudan, Civ. Action No. 10-356 (D.D.C. Mar. 28, 2014) [ECF No. 40].  To date, plaintiffs have received no compensation under those judgments and are in the midst of discovery to identify defendants' assets for attachment.  See Mem. in Supp. of Pls.' Mot to Compel Compliance with Subpoena Directed to Nonparty Cooke Legal Grp, PLLC ("Pls.' Mem.") [ECF No. 1-1] at 2.

Plaintiffs issued a subpoena to nonparty Cooke on May 1, 2019, seeking information regarding the firm's past work advising Sudan on debt restructuring.  Ex. 1 to Pls.' Mot. ("Subpoena") [ECF No. 1-4] at 2, 14–15.[1]  Plaintiffs hope to glean information about how Sudan paid Cooke and about Sudan's other commercial activities and assets both in the United States and abroad.  Pls.' Mem. at 2.

---

[1] For the sake of clarity, all page numbers herein refer to the CM/ECF pagination, rather than to documents' internal pagination.

Plaintiffs and Cooke met and conferred on May 23, 2019. Ex. 7 to Pls.' Mot. ("May 29 Letter") [ECF No. 1-10] at 2. According to plaintiffs, "Cooke Legal represented [at that meeting] that it had identified over 1,000 potentially responsive documents," but "asserted a blanket claim of privilege over all of them and took the position . . . that it would not produce those documents." Ex. 9 to Pls.' Mot. ("June 28 Letter") [ECF No. 1-12] at 2. Plaintiffs thereafter sent a letter on May 29, 2019, responding to Cooke's claim that it did not possess any responsive, non-privileged documents. May 29 Letter at 2–3. Plaintiffs followed up with letters on June 17 and June 28, but they received no response. June 28 Letter at 2–3; Pls.' Mem. at 6. On September 6, 2019, plaintiffs filed this motion to compel compliance with their May 1, 2019 subpoena. Pls.' Mot. 2.

Cooke responded on October 22, 2019, objecting to each of plaintiffs' requests and refusing to turn over any documents related to Sudan. Non-Party Cooke Legal Grp.'s Resp. & Objs. to Third Party Subpoena Issued by the Pls. ("Cooke's Resp.") [ECF No. 6] ¶¶ 1–7. According to Cooke, one of its prior partners, Mr. Thomas Laryea, began working with Sudan while he was a partner at Dentons Law Firm and continued that representation when he became a partner at the now-defunct Cooke Robotham, LLC. Decl. & Claim of Privilege ("Cooke Decl.") [ECF No. 6-1] ¶ 3. Since then, Cooke Robotham has dissolved and the present firm, Cooke Legal Group, has been established. Id. Cooke maintains a "joint email system" that appears to retain at least some records from Mr. Laryea's time at Cooke Robotham, but Mr. Laryea is not presently affiliated with the firm. Id.

Cooke argues that Mr. Laryea or Dentons is the proper target of plaintiffs' subpoena, and that the firm lacks Mr. Laryea's "permission" to release portions of the joint email system related to his work with Sudan. Id. Cooke also contends that whatever responsive documents it may possess are protected under attorney-client or work-product privilege. Cooke's Resp. ¶¶ 1–7. And

the firm objects to various other aspects of plaintiffs' subpoena. Id. Plaintiffs filed a reply, see Reply Br. in Supp. of Pls.' Mot. to Compel Compliance with Subpoena Directed to Nonparty Cooke Legal Grp., PLLC ("Pls.' Reply") [ECF No. 7], and the matter is now ripe for consideration.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 45 permits a party to command, via subpoena, the production of documents that are in the "possession, custody, or control" of a nonparty. Fed. R. Civ. P. 45(a)(1)(A)(iii). "Control is the test with regard to the production of documents and is defined not only as possession, but as the legal right to obtain the documents on demand." In re Barnwell Enters. Ltd, 265 F. Supp. 3d 1, 16 (D.D.C. 2017) (citation omitted). "It does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather the right, authority, or practical ability to obtain the documents from a non-party to the action." Id. (internal quotation marks omitted).

A nonparty responding to a subpoena need not produce documents protected by attorney-client privilege. See In re Sealed Case, 737 F.2d 94, 98–99 (D.C. Cir. 1984); see also Fed. R. Civ. P. 45(e)(2). As the D.C. Circuit has summarized:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Sealed Case, 737 F.2d at 98–99 (internal quotation omitted). Communications from attorneys to their clients are covered only "if they rest on confidential information obtained from the client." Id. at 99.

"The work product protection is broader than the attorney-client privilege in that it is not restricted solely to confidential communications between an attorney and client." FTC v. Boehringer Ingelheim Pharm., Inc., 778 F.3d 142, 149 (D.C. Cir. 2015). "It is narrower, however, insofar as the doctrine protects only work performed in anticipation of litigation or for trial." Id.

## ANALYSIS

Cooke raises three blanket objections to plaintiffs' subpoena. First, Cooke contends that it "has no documents responsive to [plaintiffs'] request[s]." Cooke's Resp. ¶¶ 1–7. Plaintiffs contest this claim, noting that Cooke stated during a May 23, 2019 conference call that "a basic search of 'Sudan' in Mr. Thomas Laryea's email records hit on approximately 1,000 documents." May 29 Letter at 3. The claim is also belied by the firm's own statements that it retains a "joint email system" possibly containing information related to Mr. Laryea's previous work performed on behalf of Dentons for Sudan. Cooke Decl. ¶ 3. Cooke's bald statements that it has no responsive documents are thus unavailing.

Cooke suggests that, even if it could access the documents in question through this "joint email system," the subpoena is misdirected because the documents belong to the now-defunct Cooke Robotham, to Mr. Laryea, or to Dentons. Id. But this contention contradicts the plain language of Rule 45. When served a subpoena, a nonparty is required to produce records that are in its "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Cooke does not deny possessing this joint email system and having the "practical ability to obtain the documents," and it is thus required to comply with the subpoena. Barnwell Enters., 265 F. Supp. 3d at 16 (citation omitted). Rule 45 uses the disjunctive "or," and a party who has any of "possession, custody, or control" must comply with a properly issued subpoena. See, e.g., id. (requiring employer to

produce documents it controlled, but did not possess); see also In re Citric Acid Litig., 191 F.3d 1090, 1107 (9th Cir. 1999) (noting that if party has control, but not possession or custody, that party must still comply with Rule 45 subpoena); In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995) (noting that "legal ownership of the document is not determinative" for evaluating whether a party has "possession, custody or control" for purposes of Federal Rule of Civil Procedure 34(a)). Cooke protests that it does not have Mr. Laryea's "permission to release any portion of the joint email system." Cooke Decl. ¶ 3. Mr. Laryea has not moved to quash the subpoena, however, and aside from claiming that certain documents are privileged, which the Court addresses below, he would have no legal basis upon which to object to the instant subpoena. See Kennedy v. Basil, No. 18-CV-2501 (ALC) (KNF), 2018 WL 4538898, at *4 (S.D.N.Y. Sept. 20, 2018); United States v. SouthernCare, Inc., Case No. CV410-124, 2015 WL 5604367, at *2 (S.D. Ga. Sept. 23, 2015).

Second, Cooke argues that all of plaintiffs' requests are "overly broad, unduly burdensome, vague, ambiguous, and not reasonably specific." Cooke's Resp. ¶¶ 1–7. Even assuming that Cooke did not waive these points by failing to serve written objections within fourteen days of being served with the subpoena, but see Fed. R. Civ. P. 45(d)(2)(B) (requiring objections within fourteen days of service); Alexander v. FBI, 186 F.R.D. 21, 34 (D.D.C. 1998) (noting that objections that fail to comply with current Fed. R. Civ. P. 45(d)(2)(B) typically are waived), none of the points is persuasive.

The Court "entertains an unduly burdensome objection when the responding party demonstrates how the document is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 242 F.R.D. 1, 10 (D.D.C. 2007) (internal quotation marks omitted).

Cooke has failed to articulate, let alone demonstrate by affidavit or evidence, that compliance with the subpoena would be overly burdensome or unfeasible.  Although medical issues may have delayed production of the responsive documents, see Cooke Decl. ¶ 3, plaintiffs' subpoena is not the source of that particular burden.  Nor are the specific document requests "vague" or "ambiguous."  See Subpoena at 14–15 (describing with sufficient specificity the documents requested).  Ultimately, plaintiffs request information relating to the assistance that Cooke provided to Sudan while the nation sought to restructure its debt.  See id. at 6–15.  Such information is "relevant to determining Sudan's potentially attachable assets," Amduso v. Republic of Sudan, 288 F. Supp. 3d 90, 95 (D.D.C. 2017), and absent any persuasive argument to the contrary by Cooke, the boilerplate objections it advances here carry no weight.

Third, Cooke objects that plaintiffs' requests "call[] for production of documents subject to the attorney-client privilege, attorney work product doctrine, and any other applicable privileges."  Cooke's Resp. ¶¶ 1–7.  But Cooke fails to satisfy its burden of "present[ing] to the court sufficient facts to establish the [claimed] privilege[s]," which it must do "with reasonable certainty."  Sealed Case, 737 F.2d at 99.  It is not obvious that most, if any, of the documents that plaintiffs seek qualify under either the attorney-client privilege or the work-product privilege.  The latter privilege applies to "work performed in anticipation of litigation or for trial," Boehringer Ingelheim, 778 F.3d at 149, but the documents in question pertain to Cooke's work related to debt restructuring, Ex. 2 to Pls.' Mot. ("FARA Registration") [ECF No. 1-5] at 4.  This Court's review of the record reveals no mention of litigation on that matter.

Nor can Cooke turn to the attorney-client privilege as an excuse for entirely failing to comply with the subpoena.  Cooke Robotham sub-contracted with Dentons "on the representation of the Government of Sudan on [its] debt restructuring strategy."  Id. at 6.  Cooke Robotham's

7

status as a sub-contractor does not necessarily eliminate attorney-client privilege; to the extent that Cooke Robotham and Dentons worked collectively as Sudan's legal advisors, communications and documents confidentially shared between the three entities would not lose their privileged status.  Cf. FTC v. GlaxoSmithKline, 294 F.3d 141, 148 (D.C. Cir. 2002) (concluding that the attorney-client privilege extended to third parties that worked with a law firm as part of an intertwined team).  But it is implausible that all of the documents in Cooke's possession fall under attorney-client privilege.  Even if some of the documents concern legal matters discussed with Mr. Laryea in his professional capacity, documents and communications concerning billing would generally not fall under the privilege.  See United States v. Naegele, 468 F. Supp. 2d 165, 171 (D.D.C. 2007).  Cooke's blanket claim of privilege fails to differentiate between categories and thus provides no basis for denying plaintiffs' motion to compel the production of at least some of the  "over 1,000 potentially responsive documents."  June 28 Letter at 2; see Fed. R. Civ. P. 45(e)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged . . . must . . . describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable parties to assess the claim.").

The firm also claims that "any pertinent documents regarding any of [Cooke Robotham's] former clients enjoy the continuing confidentiality as outlined by DC Bar Rules 1.6." Cooke Decl. ¶ 4. Rule 1.6 provides that a lawyer of the D.C. Bar shall not knowingly "reveal a confidence or secret of the lawyer's client." D.C. Bar Rule of Prof'l Conduct 1.6(a)(1).  But the Rule goes on to permit such disclosures "when permitted by these Rules or required by law or court order." Id. 1.6(e)(2)(A).  Rule 1.6 therefore does not bar Cooke from complying with the instant subpoena, but instead specifically permits the firm to do so.

Finally, Cooke protests that several of plaintiffs' requests are improper insofar as they "pertain to matters outside the Jurisdiction of this Court." Cooke's Resp. ¶¶ 3, 6–7. These requests are for documents related to Sudan's commercial activities with persons located outside the United States and to Sudan's financial accounts and properties "anywhere in the world." Subpoena at 14. Rule 45 does impose some geographic limits on the Court's power to issue subpoenas, but such limitations concern the location of the subpoenaed individual, not the subject matter of the requested documents. See Fed. R. Civ. P. 45(c)(2) ("A subpoena may command . . . production of documents . . . at a place within 100 miles of where the [targeted] person resides, is employed, or regularly transacts business in person."). Cooke does not contest that this Court has jurisdiction over the present dispute, and it provides no support for the claim that documents about foreign persons, accounts, or property cannot be subpoenaed. Indeed, in a related matter, this Court has already concluded that "[d]istrict courts may order discovery related to assets abroad, even though plaintiffs may have to seek execution on those assets from a foreign court." Amduso, 288 F. Supp. 3d at 97. The Court comes to the same conclusion today.

## CONCLUSION

For these reasons, plaintiffs' motion to compel will be granted. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: December 11, 2019